[No. 12368.    Department Two.    September 17, 1915.]

J. E. Belcher et al., Respondents, v. Thomas Carstens, Appellant.[1]

Corporations — Officers — Contracts — Employment.  An agreement by the president and principal stockholder of a corporation to pay to two of its employees, as extra compensation in addition to their regular salaries, the reasonable value of their services in effecting a reorganization of the corporation, is binding, regardless of who originated the plan, or whether the services were within the scope of their usual duties or were of any permanent benefit.

Same — Contracts — Employment — Consideration.  The release of rights in shares of the capital stock of a proposed corporation, put up with a trust company as part payment for helping to reorganize the company, is a good consideration for a promise to pay the reasonable value of services already performed and to be performed in effecting the reorganization.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered June 8, 1914, upon findings in favor of the plaintiffs, in an action on contract, tried to the court.    Affirmed.

Kerr & McCord, for appellant.

Gordon & Easterday and W. D. Askren, for respondents.

Fullerton, J.—This is an action by the respondents, J. E. Belcher and J. M. Neal, former employees of the Carstens Packing Company, against Thomas Carstens, president and majority stockholder of that company, to recover for the value of their services rendered in connection with a reorganization of the company.    The action was founded upon a promise alleged to have been made by Thomas Carstens, the appellant, to the respondents, wherein he agreed to pay them the reasonable value of such services.

The findings of the trial court were, in substance, these: The Carstens Packing Company is a Maine corporation.    Re-

[1]Reported in 151 Pac. 802.

spondent Belcher was, at the time the services were performed, the assistant treasurer and manager of the traffic department. Neal was the sales manager. In the spring of 1911, Belcher and Neal prepared a prospectus setting out a scheme for the reorganization of the company. Carstens signed and approved the prospectus, and gave the parties six months time to complete an organization according to the plans set forth therein. In addition to the approval of the prospectus, respondents secured from Carstens an agreement to place 250,000 shares of common stock of the proposed company with a trust company subject to their orders; it being their purpose to use the stock in part as a bonus to secure the placing of the balance of the stock, and in part for the payment of their services. This was known and consented to by Carstens. Belcher then went east to interest financial houses in the plan. After several unsuccessful attempts to organize under the plan set out in the prospectus, Carstens, at the suggestion of Belcher, went to Boston, where Belcher was negotiating with the firm of Tucker, Turner & Company.

At this time, the prospectus scheme for the reorganization was abandoned and (adopting the language of the trial court),

"A new agreement entered into at Boston, Massachusetts, wherein and whereby, in consideration of the work, labor and services already expended by the plaintiffs in that behalf, and in consideration of their continuing thereafter to render such aid, assistance, and services to the defendant Thomas Carstens, in an effort to reorganize the affairs of the said Carstens Packing Company, or sell a part or portion of the stock in that or a new corporation to be organized and take over its assets, upon a plan agreeable to the defendant, the defendant promised and agreed to satisfactorily compensate the plaintiffs therefor, and to pay them what their services in that behalf were reasonably worth."

The negotiations with Tucker, Turner & Company were then carried on by Carstens, assisted by Belcher and Neal,

who also went east for that purpose, and finally culminated in the incorporation of a Massachusetts concern to which the assets of the Maine corporation were transferred. Turner, Tucker & Company, assisted by the respondents, continued negotiations for the sale of the stock of the new company, but were never able to sell it on satisfactory terms and the project was finally abandoned. Carstens later secured a retransfer of the company assets to the Maine corporation. Carstens refused to pay the respondents for their services, whereupon they brought this action on the promise, alleging that the value of their services was $58,333. From a judgment of $3,000 in their favor, Carstens has appealed.

The performance of the services for which respondents seek compensation was not denied by the appellant. He does deny, however, agreeing that he would make them extra compensation as claimed by them. To substantiate this contention, he maintains that the evidence shows that the prospectus was prepared on the initiative of Belcher and Neal, and not at his request; that Belcher and Neal were sent east on vacation trips on full salary and expenses, and that he merely consented to their attempting to effect the reorganization while they were there; that the services in connection with the scheme set out in the prospectus were valueless as that scheme was found impracticable and had to be abandoned, and that the promise of compensation, which the court found he had made, was without a good consideration and therefore void.

He contends, also, that he should not be compelled to pay respondents for their services, for the reason that the Massachusetts corporation, having proved a failure, had to be abandoned and respondents' services in the Tucker, Turner & Company negotiations were valueless. Finally, appellant denies any liability to respondents, on the ground that the services for which they seek compensation were all within the scope of their usual employment, and having received

their regular salary while so employed, they are not entitled to extra compensation.

But we think it immaterial whether the plan of reorganization originated with Carstens or respondents, whether the services were within the scope of their usual duties, or whether or not the services were of any permanent benefit to the company. Carstens could bind himself to pay them for services in consummating a plan of their own, and such a promise could be enforced by them. The release by respondents of the four months' rights under the prospectus was a good consideration for the promise which the trial court found that the appellant had made. While Belcher and Neal both testified that they would probably have made trips east, or would probably have done other work in connection with the reorganization of the company without extra compensation if Carstens had requested it, nevertheless, Carstens could pay them extra compensation for such services if he so desired.

The trial court found that he had made such a promise, and the remaining question is whether the evidence preponderates in favor of or against the findings. We have examined the record and are unable to conclude that it does not preponderate in favor of the findings; and, without pursuing the inquiry further, we conclude that the judgment should be affirmed. It will be so ordered.

MORRIS, C. J., MAIN, and PARKER, JJ., concur.